```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
 2                    GREENBELT DIVISION


 3   _____
                                             )
 4   UNITED STATES OF AMERICA,               )
                                             )
 5        Plaintiff,                         )
                                             )Docket Number
 6              vs.                          )8:21-cr-00101-DKC-1
                                             )
 7   MADANI ILARA TEJAN,                     )
                                             )
 8        Defendant.                         )
     _____)
 9
                    TRANSCRIPT OF SENTENCING HEARING
10          BEFORE THE HONORABLE DEBORAH K. CHASANOW
                UNITED STATES DISTRICT COURT JUDGE
11          Tuesday, March 5, 2024, AT 10:00 A.M.

12   APPEARANCES:

13   On Behalf of the Plaintiff:

14        BY:  GERALD COLLINS, ESQUIRE
                  KELLY HAYES, ESQUIRE
15        OFFICE OF THE UNITED STATES ATTORNEY
          6406 Ivy Lane, Suite 800
16        Greenbelt, MD  20770
          (202)514-3601
17
     On Behalf of the Defendant:
18
          BY:  CHRISTOPHER DAVIS, ESQUIRE
19               MARY DAVIS, ESQUIRE
          DAVIS & DAVIS
20        1350 Connecticut Avenue, NW
          Suite 202
21        Washington, DC  20036
          (202)234-7300
22

23   ALSO PRESENT:  Kevin McDonald, FBI
                     Allyson Hamlin, PG Police Department
24                   Ed Encarnacion, Probation Office

25        ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPED NOTES***
```

```
 1                    P R O C E E D I N G S

 2         (Court called to order.)

 3         DEPUTY CLERK:  The United States District Court for

 4   the District of Maryland is now in session.  The Honorable

 5   Deborah K. Chasanow presiding.

 6         THE COURT:  Good morning.

 7         (ALL COUNSEL:  Good morning, Your Honor.)

 8         THE COURT:  Please be seated.

 9         Mr. Collins, call the case.

10         MR. COLLINS:  Your Honor, United States of

11   America v. Madani Ilari Tejan, DKC-21-101.

12         Gerald Collins and Kelly Hayes on behalf of the United

13   States government.  Your Honor, we're joined at counsel table

14   by FBI Special Agent Kevin McDonald, and Prince George's County

15   Detective Allyson Hamlin.

16         Good morning, Your Honor.

17         THE COURT:  Good to see all of you.

18         Mr. Davis?  Ms. Davis?

19         MR. DAVIS:  Good morning, Your Honor.  Christopher

20   Davis and Mary Davis on behalf of Madani Ilari Tejan.

21         THE COURT:  Who is, of course, also present.  Good

22   morning to all of you.

23         Okay.  And Mr. Encarnacion is here on behalf of Probation.

24         PROBATION OFFICER:  Good morning, Your Honor.

25         THE COURT:  All right.  We are now here for a
```

1  sentencing hearing.  We had a hearing last week at which I

2  resolved some of the guideline issues and some other matters

3  that needed to be addressed.

4      I guess the only thing I've received in writing since that

5  hearing is a letter from the government concerning withdrawing

6  a partial request for restitution.

7      Is that everything I should have received in writing in

8  addition from what we talked about last time?

9          **MR. COLLINS:**  That is correct, Your Honor.

10         **MR. DAVIS:**  That's correct, Your Honor.

11         **THE COURT:**  Okay.  I had ascertained at that time

12  that you had reviewed the presentence report with Mr. Tejan,

13  and I resolved some of the issues, but I think we left a few

14  for discussion today; is that -- is that right?  Mr. Davis?

15         **MR. DAVIS:**  I believe there was an -- the issue of

16  restitution, Your Honor, left open.

17         **THE COURT:**  Well, yes, that, in part.

18      Mr. Collins, have you looked again at the government's

19  statement of facts that the Probation Office adopted?

20         **MR. COLLINS:**  Yes, Your Honor.  And we've provided

21  Probation with an updated set of facts, Your Honor, based on

22  the Court's concerns with what was in the earlier draft of the

23  presentence report.

24         **THE COURT:**  Have you shown it to the defense?

25         **MR. COLLINS:**  Yes, Your Honor, everyone was on that

1    correspondence when we sent it.  Actually, we actually

2    communicated in advance to make sure that we agreed on the

3    statement, Your Honor.

4            **THE COURT:**  But I haven't seen it.  All right.

5    Nobody sent it to me.

6        Mr. Davis, were you satisfied, if not happy, with the

7    changes?

8            **MR. DAVIS:**  We have no objection to it, Your Honor.

9            **THE COURT:**  All right.  May I see it?

10       Thank you.  All right.  I do see it takes care of the

11   direct issues that I had had trouble with.

12       I would also suggest, Mr. Encarnacion, that the

13   highlighted, bolded lead-in before Paragraph 15 needs to be

14   changed.

15           **PROBATION OFFICER:**  Shall I eliminate that entirely,

16   Your Honor?

17           **THE COURT:**  Well, that would help.  I mean, that will

18   take care of it.  It implies -- it says eyewitness, and there

19   is no eyewitness.

20       Okay.  So we're going to take out that entire subheading.

21       Paragraph 15, as I indicated before, said "law enforcement

22   learned that another individual, Witness 2, was present at the

23   time of," and I think that needs to be changed to "was close

24   by" at the time of, not "present."

25       All right.  So I'll direct that.

1     What you've given to me is a substitute Paragraph 16,

2   which I agree with.

3     Okay.  Okay.  Mr. Davis, I've looked again at the

4   objections that appear at Pages 28 and 29.  It appears we took

5   care of or they had been agreed in advance with all except the

6   eighth one, where you objected to the listing of prior offenses

7   that did not result in convictions, and you would argue that

8   all of them were picked up by the federal government, and that

9   the paragraph should be deleted.

10    Well, I don't need that they need to be deleted.  I think

11  the presentence report clearly reflects that they were picked

12  up and they are the same charges.  So I don't see the need to

13  adjust that.

14    So I do believe now we have addressed all of the

15  objections that were stated to the Probation Office.

16    Perhaps, Mr. Collins, you can now clarify what restitution

17  is being sought and see if we understand where we are.

18        **MR. COLLINS:**  The Court's brief indulgence, Your

19  Honor.

20    Your Honor, the government is only requesting restitution

21  as it relates to the expenses associated with Ms. Gladney.  And

22  those are expenses that we discussed at length at the last

23  hearing.

24    In particular, based on the Court's recalculation of

25  expenses related to the memorial event, we believe that the new

1    calculated figure will be $1,250.

2        Court's brief indulgence.

3        That there would be also $150 that were attributable to

4    damaged clothing.

5        And then, Your Honor, there was -- the original expense

6    that we had talked about was $3,950, those were all

7    attributable to Ms. Gladney.  However, Ms. Gladney did receive

8    $5,000 for funeral-related expenses that would -- that came

9    from the Maryland Criminal Injuries Compensation Board.  Her

10   family was reimbursed for that amount of money.

11       And, Your Honor, it's my -- based on my math, Your Honor,

12   based on what should be left over, should be $350, Your Honor.

13             **THE COURT:**  Okay.

14         **MR. COLLINS:**  Okay?

15             **THE COURT:**  That's what my calculations would show as

16   well.

17       Mr. Davis, does that clarify it?

18             **MR. DAVIS:**  That does, Your Honor.

19             **THE COURT:**  All right.  Okay.  Is anyone to speak

20   other than counsel and Mr. Tejan today?

21             **MR. COLLINS:**  Yes, Your Honor.  Your Honor, the

22   government has a list of family members associated with

23   Mr. Freeland, who will be speaking.

24       Number one will be Mr. Seawell Freeland, who is his

25   father; Ms. Candice Corbin, who we discussed at the last

1  hearing; and then his mother, Ms. Annette Gladney.  Ms. Gladney

2  has prepared a statement, Your Honor, that was submitted.

3  Ms. Gladney has asked that if she cannot get through the

4  statement, if one of her family members could read the

5  statement for her.  And she has identified that person as

6  Keeisha.

7         **THE COURT:**  Okay.  I should have noted for the

8  record, I told you before I had received the victim impact

9  statements in writing.  I had not read them as of the time of

10  the last hearing.  I have now read the statement presented by

11  the family of Mr. Freeland, but not the others.

12     Okay.  Shall we begin with those family members before we

13  turn to counsel?

14         **MR. COLLINS:**  Yes, Your Honor.  So we would call

15  Mr. Seawell Freeland to the stand, Your Honor.

16         **THE COURT:**  Okay.  He doesn't need to take the stand.

17  He can come right up here in the middle where there's a

18  microphone.

19         **MR. COLLINS:**  Sure.

20         **THE COURT:**  Good morning.

21         **SEAWELL FREELAND:**  Good morning.

22         **THE COURT:**  Okay.  I would like you please to start

23  by giving us your name, and then spelling your full name for

24  the court reporter.

25         **SEAWELL FREELAND:**  Seawell, S-E-A-W-E-L-L, Freeland,

```
 1  F-R-E-E-L-A-N-D.

 2          THE COURT:  Okay.  Thank you.

 3      What do you want me to know?

 4          SEAWELL FREELAND:  Well, I would just -- there's a

 5  lot, because it was, like, that was taking my son from me.  And

 6  it's hard, you know, to deal with.  And it's, like, taking the

 7  kids' father, and it's just hard to deal with.

 8          THE COURT:  Okay.  Thank you.

 9          SEAWELL FREELAND:  Thank you.

10          MR. COLLINS:  Your Honor, Ms. Corbin would be next.

11          THE COURT:  Uh-huh.  Good morning.

12          CANDICE CORBIN:  Good morning, Your Honor.

13          THE COURT:  Again, would you please state your name

14  and spell it for our court reporter.

15          CANDICE CORBIN:  Yes.  My name is Candice Corbin,

16  it's spelled C-A-N-D-I-C-E, C-O-R-B-I-N.

17          THE COURT:  Okay.  Go ahead.

18          CANDICE CORBIN:  Okay.  I first would like to thank

19  you, Your Honor, for allowing me the opportunity to offer my

20  victim impact statement.  It means a great deal to be able to

21  get up here and speak to you on how this has affected me.

22      You know, I -- I often wonder whether the defendant

23  understands that once Anthony took his last breath, there was

24  no -- there was nothing else he could do to him.  You know,

25  there was no more pain that he could cause him.
```

1      But it's the family, it's us, it's the -- it's those of us

2   who love Anthony that are left behind to -- that are left

3   behind to rebuild after being broken under a mountain of grief.

4      I'm sorry.

5      Okay.  Anthony has five children, four of whom are boys.

6   The youngest being four, and the oldest being 13, and we're

7   already seeing the trickling and crippling effects of not

8   having their fathers around.  Not just having their fathers

9   around, but having their fathers taken from them in such a

10  tragic way and so sudden.

11     If I had to ask you of anything, it would be to impose a

12  maximum sentence available for them, because, you know, they

13  are going to proceed us.  They have to continue and figure out

14  how not to let this tragedy shape their lives and the

15  generations that are going to come after them.

16     So if -- again, if for anybody else, please, for the

17  children, because I don't think the defendant can list anything

18  that they have done to him.

19     And that will be all.

20          **THE COURT:**  Thank you.

21          **MR. COLLINS:**  Your Honor, Ms. Annette Gladney.

22          **CANDITA BRANDON:**  Good morning, Your Honor.

23          **THE COURT:**  Good morning, Ms. Gladney.  If you would,

24  again, state and spell your name for the court reporter.

25          **CANDITA BRANDON:**  So I'm Candita Brandon.  I'm going

1  to read on behalf --

2           **THE COURT:**  Oh, okay.

3           **CANDITA BRANDON:**  -- of Ms. Gladney.

4      C-A-N-D-I-T-A; last name, Brandon, B-R-A-N-D-O-N.

5           **THE COURT:**  Okay.  And you're reading the statement

6  of Annette Gladney?

7           **CANDITA BRANDON:**  Yes.  My name is Annette Gladney,

8  and I lost my son, Anthony Freeland, when he was murdered by

9  Madani Tejan.  On October 3rd, 2018, Anthony was murdered by

10  the defendant, Tejan; someone he mistakenly thought was his

11  friend.

12      The defendant, Tejan, took a part of my life that I cannot

13  get God to replace.  Since that day, I have felt a pain that I

14  cannot describe.  I live and walk on eggshells, and I feel like

15  I failed Anthony and my other children.  To this day, I cannot

16  look them in their faces because I feel like I have failed to

17  protect them.

18      As I painfully heard at the trial, the defendant, Tejan's,

19  actions were preplanned.  And because of his plan, me and my

20  children, and Anthony's children, have all been left in a state

21  of mental depression.

22      Every time I see Anthony's children, I have to hold back

23  tears so they don't see me crying.  I have panic attacks and

24  anxiety and sometimes I feel like I can't breathe.

25      I have nightmares, and I hate when the phone rings at

1  night.  I fear that it will be another nighttime caller
2  informing me that another one of my family members has been
3  killed.

4     I still wake up crying and cannot go to work some days.
5  I'm scared and afraid for no reason, and I can no longer trust
6  friends as I did in the past.

7     The loss of Anthony is beyond words.

8     Anthony was the glue -- Anthony was the glue that held the
9  family together.  He was very smart.  He was caring and funny.
10 He was clever and compassionate.  He also was intelligent and
11 gave good advice.

12    He brought us all together and he loved family time.

13    At the time of his murder, he had four children and was in
14 the midst of planning his wedding.  I think about Anthony all
15 the time.  It is very painful to contemplate a future without
16 him.

17    Anthony had a baby shortly after his murder, a baby he did
18 not know about and never got to see or hold.  He would have
19 been thrilled to know that he was having a baby with his
20 fiancee, Candice.  He loved her so much, and he couldn't wait
21 to make her his wife.

22    Now Anthony has five children that he will never be able
23 to raise, to hold or to hug.  He can't spend time with them,
24 talk to them, play with them.  He can't even enjoy watching
25 them grow up.

1   I'm trying my best to see that anything these kids need,

2   that I can help, because their dad is gone.  I have been

3   stressed and depressed since October 3rd, 2018, trying to keep

4   my head above water and make ends meet.  I am financially

5   struggling and trying to get my life back on track after paying

6   $2,946 to the mortuary, and $3,950 to the funeral home, and

7   then another $4,850 for other funeral related expenses that

8   would -- that I would not otherwise have incurred, including

9   Anthony's burial clothing, renting the building for the funeral

10  service and repass, and paying for the repass at the gathering

11  in his honor for his last time.

12      I'm so hurt, I am sad, and I am missing my child.  I

13  didn't deserve this and neither did Anthony.

14      Anthony came from a giving family, and whatever his

15  friend, the defendant, Tejan needed, we, as a family, probably

16  could have helped him too.  We love hard, we take care of

17  others, and we do whatever is necessary to be done.

18      Now I can't help myself.  I am financially struggling, my

19  statements are wiped out, and at this time, I don't feel able

20  to do anything for anyone.

21      Recently, I went to the government to apply for food

22  stamps, needing help myself because I am no longer -- I no

23  longer have a savings account and I am still behind on paying

24  my bills.

25      I think about my son Anthony every day, and I just want to

1  tell Tejan, you didn't have to do that; you didn't have to kill

2  my son, you just didn't have to do that.

3      **THE COURT:**  Thank you, Ms. Brandon.  And thank you,

4  Ms. Gladney.

5      Okay.  Anyone else?  Nobody, Mr. Davis?

6      **MR. DAVIS:**  We have no one we're calling, Your Honor.

7      **THE COURT:**  Okay.  All right.  Mr. Collins?

8      **MR. COLLINS:**  Thank you, Your Honor.

9      Your Honor, the government is aware that the Court has to

10 consider the 3553(a) factors when determining an appropriate

11 sentence in this case.  And the government believes that when

12 considering those factors in conjunction with all the evidence

13 and the statements that even the Court has heard today, that

14 the appropriate sentence in this case is the top of the

15 guidelines as it relates to Counts One, Two, and Three.

16     And the maximum on -- well, actually the maximum on Three

17 and Four, which we believe would be appropriate in this case,

18 Your Honor.

19     Based on the crimes alleged that the defendant has now

20 been convicted of, the government believes that these types of

21 sentences, Your Honor, would be sufficient but not greater than

22 necessary to achieve the goals of sentencing.

23     And, Your Honor, as we have already outlined in our

24 sentencing memorandum, and I don't want to overspeak, but I do

25 think it's important, Your Honor, just to highlight some of the

 1   considerations that the government has factored into making

 2   this recommendation, Your Honor, in conjunction with the

 3   3553(a) factors.

 4        As the Court is aware, this was a very, very serious case,

 5   just starting with the drug trafficking.

 6        I think -- I think the government would acknowledge, Your

 7   Honor, that the defendant is not considered a major drug

 8   trafficker in the sense that the government normally would deal

 9   with, someone who is involved in a large, widespread

10   enterprise.

11        However, the government would let the Court know that the

12   drug trafficking that this defendant was involved in was very,

13   very serious.  It was very serious, Your Honor, based on

14   primarily the nature of drugs that the defendant was selling.

15        As the Court is aware, several of the pills that the

16   defendant had in his possession that he was selling, including

17   the over 1,013 pills that were recovered from him, were pills

18   that were laced with fentanyl.  And we know that fentanyl has

19   had a very destructive effect not only throughout this region,

20   but throughout the entire United States, Your Honor.

21        And based on the amount of pills that we know that the

22   defendant had in that one instance, and based on the

23   communications that we knew that he was having with others as

24   it related to the sale of prescription pills that were laced

25   with fentanyl, the government believes that this is a very,

1  very serious offense, Your Honor.

2       And I think, Your Honor, when you look at the drug

3  trafficking, I think many people have different opinions as to

4  whether drug trafficking is a serious crime or not.

5       However, based on the facts of this case, we know that

6  this defendant was willing to go to extreme lengths to maintain

7  this drug trafficking operation that he had.

8       Based on some of the evidence that was presented before

9  Judge Hazel as it related to the defendant and his drug

10 trafficking activities, and from what we know happened with

11 Mr. Freeland, we know that the defendant was not scared or not

12 afraid to rob and potentially shoot people, as was done with

13 Mr. Freeland, in order to maintain this drug activity.

14      And so, Your Honor, when you consider those things, the

15 government -- the government firmly believes that the drug

16 trafficking activity in this case was very serious, one that

17 involves serious substances, one that involves serious acts in

18 order to maintain its operations.  And for those reasons, Your

19 Honor, we believe that a top of the guideline sentence is

20 appropriate as it relates to the drug offenses.

21      Your Honor, when we just discussed the nature and

22 circumstances around the murder of Anthony Freeland, I don't

23 think there's any other description, Your Honor, but to say

24 this is a very, very serious and heinous crime.

25      As you've already heard from the family members, by all

1  accounts, Anthony Freeland believed that the defendant was his

2  friend, someone that he trusted.  Clearly he trusted him well

3  enough to be involved in this illegal operation with, but

4  someone that he knew and he trusted; trusted to the point where

5  he could be lured out to a neighborhood in Prince George's

6  County somewhere that he was not familiar with to meet up with

7  him, only, Your Honor, to be brutally murdered.

8      And based on the testimony that we heard at trial, and

9  based on some of the video evidence that was introduced at

10  trial, this murder didn't appear to be something that happened

11  over the course of some argument between the two.  The video

12  evidence that was -- that was shown during trial showed who we

13  believed to be the defendant exiting a vehicle, walking towards

14  the direction of where Mr. Freeland's vehicle was, and within

15  mere minutes, Your Honor, gunshots were fired.

16      And we know that based on the testimony, testimony of some

17  of the firearms examiners who recovered evidence, based on the

18  testimony of the medical examiner, at least one of those fired

19  shots of Mr. Freeland was at point -- pointblank range,

20  straight to the face.

21      Something that I don't think anyone would expect, you

22  know, a person who is identified or believed to be their friend

23  to do, but in this case, the defendant did.

24      And to make it worse, the defendant then shot Mr. Freeland

25  two more times, including once in the back.  And based on the

1    testimony that we heard from at least one of the witnesses, the

2    defendant bragged about this.  He bragged about, you know,

3    killing Mr. Freeland, someone who was his friend, someone who

4    we know suffered a brutal and violent death with the testimony

5    of the medical examiner with that one gunshot wound to the

6    back.  Bragged about it as he laid there in the street and

7    struggled to hang onto life.

8         And so this murder, Your Honor, is unexplainable.  I think

9    what makes it even worse, Your Honor, is it took place in this

10   neighborhood.  This neighborhood is a fairly upper class

11   neighborhood where people were walking the street that night,

12   and it was just done in such a brazen way, Your Honor.  Clearly

13   there was no concern about not only Mr. Freeland, but anyone

14   else who was out there that night.

15        Your Honor, the murder of Mr. Freeland, then, is then

16   compounded by other activities that the defendant was engaged

17   in.  And as this Court found last week, the murder of Ferdinand

18   Fotachwi is relevant conduct that is related to the murder of

19   Anthony Freeland.  And it's always been the government's

20   position that Mr. Fotachwi, because he was present during the

21   time that Mr. Freeland was murdered, was then later murdered

22   himself in the District of Columbia.  A murder that was very,

23   very similar in some way to the murder of Mr. Freeland.

24        Once again, by all accounts, Mr. Fotachwi was a friend of

25   Mr. Tejan; knew him since high school.

1     Based on the witness testimony during the motions hearing,

2   we know that Mr. Fotachwi was lured to meet with Mr. Tejan, and

3   lured into the District of Columbia where he thought they were

4   going to meet with people, Your Honor, to take part in a drug

5   deal.

6     And just like Mr. Freeland, Mr. Fotachwi was executed,

7   executed as he sat in the passenger seat of his car.

8     And like I said, Your Honor, two very, very similar,

9   similar crimes.  They appear to be set up very similarly.  We

10  know that the defendant was present at both scenes.  The

11  defendant fled both scenes.  The defendant was involved with

12  both of those.

13    And so, Your Honor, when you look at the murder of Anthony

14  Freeland and the murder of Ferdinand Fotachwi, Your Honor,

15  there is no other outcome that can come from sentencing in this

16  case, but a maximum sentence of a life sentence, for the murder

17  of these two men.

18    And then, Your Honor, when you look at other information

19  about the defendant, defendant's background and history, we

20  know that this is a defendant who has a history of being

21  involved in other similar crimes.  He was convicted here, right

22  here in Greenbelt for being involved in a commercial Hobbs Act,

23  a conspiracy.  A Hobbs Act conspiracy that involved the use of

24  guns by he and some of his other co-conspirators.

25    A Hobbs Act conspiracy, Your Honor, that he should have

1   been serving out his sentence on when he committed the murder

2   of Anthony Freeland.  And we know now that he was able to

3   abscond from custody back in August of -- August of that year,

4   of the year of Anthony Freeland's murder, and abscond and then

5   be on the run and be out in order to commit these crimes.

6       Your Honor, based on that, based on the fact that he was

7   found in a facility with the over 1,000 fentanyl pills, based

8   on the history that the government has presented to the Court

9   of the defendant's conduct while incarcerated, the government

10  doesn't believe, Your Honor, that this is someone who respects

11  the law, who respects the courts, who respects supervision.

12      And so, Your Honor, ultimately, this case is really about

13  some of the other factors that 3553(a) considers, which is

14  hopefully deterrence, Your Honor, that other people who are

15  engaged in this type of conduct that hopefully see what happens

16  with the defendant today and deter from it.  And quite frankly,

17  Your Honor, punishment, punishment.

18      The defendant deserves to be punished for these serious

19  crimes.  And as a result, Your Honor, we ask that you consider

20  sentencing him to the top of the guidelines on the drug

21  offenses and the maximums as it relates to the other offenses.

22      And I am free for any questions that the Court may have

23  for me.

24          **THE COURT:**  Thank you, Mr. Collins.

25          **MR. COLLINS:**  Thank you, Your Honor.

1    **THE COURT:**  Mr. Davis?

2    **MR. DAVIS:**  Thank you, Your Honor.  Briefly.

3    Your Honor, Mr. Tejan exercised his right to go to trial,

4    and we respect the jury's verdict.  We disagree, but we respect

5    it.  And we're prepared to go forward with sentencing now.

6    As outlined in Paragraph 6 of my sentencing memo, behind

7    every person is a story, and Mr. Tejan's story is told in the

8    presentence report.

9    I'm going to ask Your Honor to recommend the services,

10   that I've identified in Paragraph 6 of my memo, when he's

11   incarcerated.

12   I did note, and I -- we see these cases all the time, but

13   I was a little bit surprised to see when I went to look at the

14   Sentencing Commission's data, that 97.5 percent of the cases

15   pled guilty in federal court, only 2.5 percent of them go to

16   trial.  And that's a seriously unbalanced number that I have a

17   very hard time wrapping my head around.

18   I looked at the median and average range of sentences

19   imposed for murder.  They were 240 months, was the -- was the

20   median; and the average, I think, was 269 months.

21   Mr. Collins is asking for the high end of the guidelines.

22   The guidelines are life here, there is no high or low; the

23   guidelines are life.

24   I guess the point is, that we're -- by imposing these life

25   sentences on these individuals that exercise the right to go to

1  trial in these cases, I think we're compelling people to plead

2  guilty literally because the odds are so stacked up against

3  them when they go to trial.  The weight of the federal

4  government behind local prosecutions when they go to federal

5  court, it's all -- it's just overwhelming.

6      I would ask Your Honor to consider imposing a term of

7  years on Mr. Tejan.

8      As I stated a few moments ago, there's a story behind

9  everyone, and his story is told in the presentence report.  I'm

10 not going to belabor it, but I think that a term of years would

11 impose just punishment, severe enough punishment to account for

12 the offenses that have occurred.  And at the same time, put a

13 light at the end of the tunnel, if he lives that long, in order

14 to have something to look forward to and some way to possibly

15 better himself as he serves out his sentence.

16     I would ask Your Honor to recommend USP Canaan as an

17 institution that he be housed at.  Mr. Tejan understands that

18 Your Honor's recommendation is not binding, but the Bureau of

19 Prisons generally looks at the judge's recommendation.

20     And those would be my representations at this point in

21 time.

22         **THE COURT:**  Mr. Davis, I don't know if it's going to

23 be relevant, or at least not immediately, but did you review

24 the proposed conditions of supervised release with Mr. Tejan?

25         **MR. DAVIS:**  I did not.  I will point -- I reviewed

1    the presentence report with him.  Ms. Davis is nodding her

2    head.  She also reviewed it with him.  She's indicating she did

3    review the conditions of supervised release.

4          **THE COURT:**  Okay.  And no issues have been raised to

5    me.

6          **MR. DAVIS:**  No issues.  Okay.  Mr. Tejan is also

7    aware of his right to allocute on his own behalf and make a

8    statement to the Court.  He's indicated to me that he does not

9    wish to make a statement to the Court.

10         **THE COURT:**  Okay.  Mr. Tejan, I understand what

11   Mr. Davis has just told me, but I need to address you directly

12   and tell you that you do have an opportunity to speak, if you

13   wish.  You're not obligated to do so.  But I would be happy to

14   hear from you, if you do wish to speak.

15        You understand all of that?  I see you nodding.

16         **THE DEFENDANT:**  Yes, Your Honor.

17         **THE COURT:**  Okay.  But as Mr. Davis indicated, it's

18   still your decision not to say anything?

19         **THE DEFENDANT:**  Yes, Your Honor.

20         **THE COURT:**  Thank you.

21       (It is the policy of this Court that every guilty plea and

22   sentencing proceeding include a bench conference concerning

23   whether the defendant is or is not cooperating.)

24         **THE COURT:**  Okay.  Mr. Tejan is before the Court for

25   sentencing on four counts of the superseding indictment.  Count

1   One is conspiracy to distribute and possess with the intent to
2   distribute a controlled substance; Count Two is possession with
3   intent to distribute a controlled substance; Count Three is
4   interference with interstate commerce by robbery; and Count
5   Four is murder resulting from the use, carrying, brandishing
6   and discharging of a firearm during and in relation to a crime
7   of violence.

8       These offenses occurred back in October of 2018, quite
9   some time ago, at a time when Mr. Tejan was still completing
10  his sentence from an earlier conviction in this court for
11  conspiracy to interfere with commerce by robbery.  He had been
12  released to a halfway house in the District of Columbia from
13  which he absconded at some point in August, indicating that he
14  had returned to drug dealing and his criminal activity even
15  before finishing that 68-month sentence imposed by Judge Hazel.

16      That conviction had followed -- that activity had
17  followed, not by much, a prior conviction in state court in
18  which Mr. Tejan and others had also undertaken to rob someone
19  who was meeting them for the purpose of purchasing drugs.

20      Mr. Tejan was but 20 years old at that time.  He is now
21  nearly 32.

22      A mere two weeks after the offenses for which he stands
23  convicted here, both I and Judge Hazel have found that
24  Mr. Tejan was, again, with someone involved in traveling for a
25  drug deal when the murder of Mr. Fotachwi occurred.

1    Judge Hazel articulated that he was, at least in some

2    sense, responsible, if not directly the perpetrator of that

3    murder.

4    The drugs involved marijuana but also very dangerous

5    fentanyl pills masquerading as Percocet or some other

6    prescription medicine.  And as has been indicated, Mr. Tejan

7    had a significant quantity of those pills in his possession at

8    the halfway house while he was still serving a sentence for the

9    earlier Hobbs Act robbery.

10    I concluded that the jury's verdict was amply justified by

11    the evidence, that this was a deliberate and intentional

12    killing during the course of the robbery, the theft of the

13    vehicle.

14    Mr. Collins articulates that the scene made it even more

15    brazen.  I think it was obviously a very dangerous location in

16    which to be firing firearms.  Of course, it's dangerous under

17    any circumstances, but this was a residential neighborhood.

18    We don't know how long this had been in planning, but it

19    was sufficiently deliberate to constitute first degree murder.

20    Since his adulthood, Mr. Tejan has demonstrated total

21    disrespect for the law, taking from others what doesn't belong

22    to him, engaging in assaultive, very dangerous conduct,

23    sometimes alone, sometimes with others, culminating in the

24    two-week period in October of 2018.

25    It -- simply, it's not possible to overstate the

1  seriousness of this criminal activity or the need to punish and

2  protect the public from Mr. Tejan.

3      How he got there, Mr. Davis alluded to some of the

4  information in the presentence report.  Mr. Tejan had a very

5  tragic beginning to his life, being born into a country

6  involved in civil war; seeing his mother murdered; coming to

7  this country at a very young age and not being welcomed into a

8  family that was supportive in any way and having to fend for

9  himself.

10      Unfortunately, where that took him was to a very dangerous

11  place in terms of being willing to take from others and kill.

12      It does not appear that he was able to take advantage of

13  any programming in order to offset any of the very difficult

14  circumstances in his young life.

15      He turned not only to criminal activity, but also to

16  illegal drugs at a young age and has never received any

17  treatment for substance abuse.

18      The goals of sentencing are to try to promote respect for

19  law, punish people for their misconduct, keep the public safe,

20  deter both the defendant and others from further criminal

21  conduct.  I have to consider the guidelines, the history and

22  characteristics of the defendant, the kinds of sentences

23  available, the need for servicing, rehabilitation, what have

24  you, sentences imposed on others, the need for restitution; a

25  very long list of considerations.

1          The sentencing guidelines put Mr. Tejan in the highest

2    category, 43, with a criminal history category of five.

3    There's only one higher portion of the guidelines.  But

4    everything at a level 43 suggests life, which means that it's

5    really an artificial-type construct, life sentence, other than,

6    of course, when the death penalty is sought is the ultimate.

7          And the guidelines do not particularly have gradations

8    under a life sentence until you get almost all the way down to

9    30 years; that is, the guidelines are absolutely no help to a

10   sentencing judge when you're considering whether to impose life

11   or a term of years close to life, as is the dilemma here.

12         While I conclude, Mr. Tejan, that there's very little of a

13   mitigating nature in the picture that I see when I consider all

14   of your history and characteristics, what you've done with your

15   life thus far, I am still persuaded that imposing an absolute

16   sentence of life in prison is not appropriate.

17         You have forfeited your right to live among free society

18   for many, many decades, but I am not persuaded that it is

19   appropriate to foreclose the ultimate opportunity of you being

20   released again.

21         Accordingly, I am sentencing you on Counts One, Two and

22   Three to 20 years in prison concurrent, and to 50 years on

23   Count Four, also concurrent.

24         I will express it in terms of months, which is 240 months

25   on each of the first three counts, and 600 months on Count

1    Four.

2         At your age, 30 -- almost 32, this sentence may well be a

3    life sentence.  But it is not stated in those terms, and it

4    will give you the opportunity, if appropriate, for release at a

5    very old, old age.

6         I point out that we're now told what statistics show, and

7    unlike all of the murder cases that Mr. Davis has described of

8    the defendants who were sentenced under 2A1.1, which is the

9    guideline for first degree murder and doesn't include all

10   murder, the average sentence was more than 30 years, and the

11   median sentence was close to 40.

12        So this is higher than those, but, again, I am not

13   imposing a true life sentence, although I expect this may well

14   be one.

15        If you are released, you will be on supervised release for

16   the following terms:

17        Four years on Counts One and Two, three years on Count

18   Three, and five years on Count Four; all concurrent.

19        I will impose the mandatory and standard conditions of

20   supervision that we believe are necessary in any case for

21   effective supervision.

22        And in addition, I will direct that you participate in a

23   mental health treatment program, as well as a substance abuse

24   treatment program, including substance abuse testing; it may

25   not be appropriate, but vocational services, if it is

1    appropriate.

2        I am not imposing a fine.  I do impose the special

3    assessment of $400 total, that's $100 per count.  This money

4    goes into a fund to help people who are victims of crime, and

5    for that reason have financial problems that they didn't

6    otherwise have.

7        In addition, I will impose a restitution judgment in the

8    amount of $350 in favor of Mr. Freeland's mother, as we have

9    fully discussed before.  That is what her request is net of the

10   amount paid by the state fund, as I understand it.

11       I'm going to prepare and enter the judgment in writing.  I

12   will recommend assignment to Canaan, but it's up to the Bureau

13   of Prisons to decide where someone should serve a sentence.  I

14   will also suggest mental health and drug abuse treatment while

15   incarcerated.

16       What have I neglected to address?

17           **MR. COLLINS:**  Your Honor, would the Court suggest

18   that the restitution be made payable while the defendant is

19   incarcerated?

20           **THE COURT:**  Absolutely.  I am not going to suspend

21   the payments through the Bureau of Prisons.

22           **MR. COLLINS:**  And, your Honor, I was also going to

23   suggest that there was $5,971 that was seized as it relates to

24   this case.  The money could also be ordered from that, Your

25   Honor.  And that's currently in FBI possession.

1          **THE COURT:**  So are they forfeiting it?

2          **MR. COLLINS:**  Your Honor, we would just ask that it

3   be applied to restitution directly.  There was not a forfeiture

4   order sought, Your Honor.  But we'll address it, Your Honor,

5   with the forfeiture people at the United States Attorney's

6   Office and with the FBI.

7          **THE COURT:**  Okay.  The indictment had a forfeiture

8   provision in it for the firearm and ammunition and for drug

9   forfeiture, but it didn't have anything -- any amount.  And I

10  understand you did not seek any forfeiture at trial?  So there

11  was no verdict on it.

12         **MR. COLLINS:**  No, Your Honor, that's correct.

13         **THE COURT:**  Mr. Davis, you have any comment?

14         **MR. DAVIS:**  I have no objection to the restitution

15  being satisfied via the money that was seized.

16         **THE COURT:**  Okay.  What about the special assessment?

17         **MR. DAVIS:**  I have no objection to the -- that that

18  also be paid off through the money that was seized.

19         **THE COURT:**  Okay.  All right.  Mr. Collins, you have

20  to do whatever is necessary in order to reflect that agreement.

21  I don't have any say over that money.  It's not before me.

22      But Mr. Davis has acknowledged, on Mr. Tejan's behalf,

23  that he is willing to have his monetary responsibility

24  satisfied out of those funds.  Okay?

25         **MR. COLLINS:**  Okay.  We'll take care of it, Your

1  Honor.  Thank you.

2           **THE COURT:**  Anything else before I advise Mr. Tejan

3  of his right to appeal?

4           **MR. DAVIS:**  Nothing further, Your Honor.

5           **THE COURT:**  All right.  I believe the superseding

6  indictment, obviously, supersedes the original, and so the

7  original indictment is dismissed.

8      Mr. Tejan, you have the right to appeal.  An appeal must

9  be noted in writing within two weeks of when the judgment of

10 the Court is entered on the record, which I expect will be

11 today, but it might not be.

12     Mr. Davis, it's my understanding that through filings, I

13 think, before, that Mr. Tejan does intend to appeal?

14          **MR. DAVIS:**  That's correct, Your Honor.

15          **THE COURT:**  Do you wish me to direct the clerk to

16 enter that notice, or not?

17          **MR. DAVIS:**  We can file that notice, Your Honor.

18          **THE COURT:**  You can file the notice?

19          **MR. DAVIS:**  We will.

20          **THE COURT:**  All right.  Then, Mr. Tejan, your

21 attorneys will file the notice of appeal.

22     You are entitled to the appointment of counsel for your

23 appeal, if you are not able to afford to hire counsel, and I

24 believe they can also advise you as to how to make that request

25 of the Fourth Circuit.

1    I will prepare and enter this judgment in writing, and

2    copies will go out, of course, electronically.

3    Ms. Ionetz, anything you need?

4    Mr. Encarnacion, we set on adjusting the presentence

5    report?

6    **PROBATION OFFICER:**  Yes, Your Honor, I'll make the

7    changes.

8    Just for clarification, what was the amount of

9    restitution?

10   **THE COURT:**  The net is $350.

11   **PROBATION OFFICER:**  350, okay.

12   **MS. HAYES:**  Your Honor, with apologies, and I may

13   have missed it.  I know Your Honor ordered all mandatory and

14   standard conditions of supervised release that are set forth in

15   the PSR, which the defendant has reviewed.  I apologize if I

16   missed it, but are you also imposing the additional recommended

17   conditions of supervised release?

18   **THE COURT:**  Yes, substance abuse, mental health,

19   vocational, I did those, yes.  I believe I did.

20   **MS. HAYES:**  Wonderful.  Thank you, Your Honor.

21   **THE COURT:**  All right.  If there's nothing further,

22   then I thank counsel for their presentations, and everyone for

23   attending and respecting the process of the court.

24   But that completes this proceeding.

25   **DEPUTY CLERK:**  All Rise.  This Honorable Court now

1   stands adjourned.

2        (Proceedings were concluded at 11:13 a.m.)

CERTIFICATE OF OFFICIAL REPORTER

    I, Paula J. Leeper, Federal Official Court Reporter, in
and for the United States District Court for the District of
Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that
the foregoing is a true and correct transcript of the
stenographically-reported proceedings held in the
above-entitled matter and the transcript page format is in
conformance with the regulations of the Judicial Conference of
the United States.

                              Dated this 8th day of April, 2024.


                                   */S/ Paula J. Leeper*
                                   _____
                                   Paula J. Leeper
                                   Federal Official Reporter